UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ANGELA NOERPER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:17-CV-00157-NCC |
| NANCY A. BERRYHILL,<br>Deputy Commissioner of Operations,<br>Social Security Administration, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Plaintiff Angela Noerper ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Insurance ("SSI") under Title XVI, §§ 1381 *et seq.* Plaintiff has filed a Brief in Support of the Complaint (Doc. 14) and Defendant has filed a Brief in Support of the Answer (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 11).

### I. PROCEDURAL HISTORY

Plaintiff filled her applications for DIB and SSI on February 13, 2014 (Tr. 10). Plaintiff was initially denied on April 7, 2014 (Tr. 119). She filed a Request for Hearing before an Administrative Law Judge ("ALJ") on December 29, 2014 (Tr. 10). After a hearing, by decision dated August 1, 2016, the ALJ found Plaintiff not disabled (Tr. 7-27). On July 26, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and has not engaged in substantial gainful activity since August 16, 2010, the alleged onset date of the disability (Tr. 13). The ALJ found Plaintiff has the severe impairments of degenerative joint disease of the knees, arthritis, plantar fasciitis, fibromyalgia, carpal tunnel syndrome, and affective disorder (*Id.*). The Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018) (*Id.*). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity to perform light work[1] with the following limitations (Tr. 15). She can lift or carry 20 pounds occasionally and 10 pounds frequently (*Id.*). She can stand or walk for 6 hours in an 8-hour workday (*Id.*). She can sit for 6 hours in an 8-hour workday (*Id.*). She can frequently push or pull in the limits for lifting and carrying (*Id.*). She can occasionally climb ramps and stairs but she should not climb ladders, ropes, or scaffolds in a work setting (*Id.*). She can occasionally balance, stoop, kneel, crouch, and crawl (*Id.*). She should not do repetitive forceful gripping (*Id.*). She should avoid concentrated exposure to cold temperatures and vibration (*Id.*). She can understand, remember, and carry out simple repetitive work tasks and instructions at a specific vocational preparation ("SVP") 2 level[2] (Tr. 15).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[2] "Specific vocational preparation is defined as the amount of time lapse required by a typical worker to learn the technique, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." If a person can learn to do the job in 30 days, the job is considered unskilled with an SVP of 1 or 2. 20 C.F.R. § 404.1568. *See* 20 C.F.R. § 404.1567

The ALJ found Plaintiff unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that she can perform, including: marker, routing clerk, and collator operator (Tr. 20-21). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 22). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1529, 416.920. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities . . . ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R.

---

(defining SVP level 1: sedentary work). SVP 2 level involves frequent lifting as well as significantly more standing and walking than SVP 1. 20 C.F.R. §§ 404.1567(b), 416.968.

§§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steel v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steel*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228

4

F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, the administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.3d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff broadly alleges that the Commissioner's decision was not supported by substantial evidence (Doc. 14). Specifically, Plaintiff asserts that the ALJ erred in finding that Plaintiff can perform the prolonged standing and walking required for light work, and that Plaintiff is limited to repetitive forceful gripping (*Id.* at 8-12). Furthermore, the Plaintiff asserts that the ALJ failed to properly address Plaintiff's credibility and mental limitations (*Id.* at 12-15). For the following reasons, the Court finds that Plaintiff's arguments are without merit; the ALJ's decision is based on substantial evidence and is consistent

with the Regulations and case law.

**A. Evaluation of Plaintiff's Subjective Complaints**

The Court will first consider the consistency of Plaintiff's complaints as the ALJ's evaluation of Plaintiff's symptoms was essential to the ALJ's determination of other issues, including Plaintiff's RFC.[3] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945. In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

To the extent that the ALJ did not specifically cite *Polaski*, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. *Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004). Additionally, an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). *See also Tucker v. Barnhart*, 363 F.3d

---

[3] Effective March 28, 2016, a new Ruling − SSR 16-3p − superseded SSR 96-7p. *See* Social Security Ruling (SSR) 16-3p, (https://www.ssa.gov/OP_Home/rulings/di/01/@@R2016-03.html). This new SSR eliminated the use of the term "credibility" from SSA's regulatory policy, and clarified that an ALJ's evaluation of a claimant's subjective assertions regarding her symptoms is not an examination of a claimaint's character. Rather, the ALJ's goal is to assess the degree to which the claimant's allegations are consistent with the other evidence of record. SSR 16-3p ushered in a change of terminology, but did not alter the ALJ's process on a substantive level. Because the ALJ's decision in this case was released after March 28, 2016, SSR 16-3p applies to this matter.

781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered.").

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his evaluation of Plaintiff's subjective complaints are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence of record and determined that it failed to support the severity of Plaintiff's alleged symptoms (Tr. 17-19). Specifically, the ALJ found that while Plaintiff alleged significant symptoms and limitations due to pain, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 17). Contrary to Plaintiff's assertion, the ALJ considered Plaintiff's subjective pain complaints and found them not credible (*Id.*). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). In the ALJ's analysis of Plaintiff's credibility, he specifically referred to several objective measures during the relevant period to explain why Plaintiff's physical condition was not disabling (Tr. 17-19). His detailed review, encompassing nearly two full pages regarding her physical impairments alone, included findings of relatively normal clinical signs and diagnostic testing (*Id.*). Although the Plaintiff's "medical evidence supports a history of degenerative joint disease and arthritis affecting the claimant's joints," the ALJ noted, X-rays of the knees only showed mild

7

medial compartment joint space loss and her pain may be exacerbated by fibromyalgia (Tr. 17). An X-ray of the left hand showed severe osteoarthritis (Tr. 17, 678-737). Furthermore, her physical examination "revealed a normal station and gait, and intact sensations, motor strength, and muscle tone in the legs" (Tr. 17). Plaintiff claimed she "hurt all over" even though her medical records showed signs of her improvement during the course of treatment (Tr. 449, 454, 470, 474, 653, 691).

The ALJ also properly considered Plaintiff's need to use an assistive device. The ALJ acknowledged that Plaintiff testified that she uses an assistive device, a cane, but found that no medical source had prescribed Plaintiff an assistive device (Tr. 17, 35). However, the ALJ determined "[Plaintiff] did not present with one to the hearing and there is no prescription for [a cane] in the record" (Tr. 17). However, self-reports, even those made to physicians, are not sufficient to support the necessity of an assistive device. With this information, the ALJ determined that Plaintiff was subject to light work with restrictions (*Id.*). *See Johnson v. Astrue*, 816 F. Supp. 2d 752, 773 (W.D. Mo. 2011) (finding plaintiff's contention that his physician ordered him to use a cane as an assistive device not supported by the record when the record only reflected that plaintiff reported to a medical provider that another provider told plaintiff he needed to use a cane); *Hillstrom v. Comm'r of Soc. Sec.*, No. 3:15-CV-40, 2016 WL 7507789, at *5 (D.N.D. May 24, 2016) (plaintiff's self-reports did not establish that she "required the use of any hand-held assistive devices during the relevant time period").

Second, the ALJ reviewed objective evidence as it related to Plaintiff's mental health impairments (Tr. 17-18). Specifically, the ALJ found that, "the medical evidence supports the existence of an affective disorder . . . . As a result of her mental impairment, the undersigned finds she can only understand, remember, and carry out simple and repetitive, unskilled work" (Tr. 18). Indeed, as noted by the ALJ, Amber Richardson, Ph.D., the consultative examiner, diagnosed Plaintiff with depressive symptoms, pre-existing learning disabilities, and a head injury in early

8

2014 (Tr. 18, 485). Three months later, Plaintiff attempted to take her own life in 2014 and was admitted to Phelps County Regional Medical Center (Tr. 18, 565-585). The ALJ noted that she appeared to respond well to treatment at the hospital (Tr. 18). "[S]he was experiencing significant but unique life stressors at the time that were not likely to recur including recently moving to Salem, her daughter going through a divorce, and her father getting diagnosed with cancer" (*Id.*). However, these upsetting events are non-medical in nature, and do not reflect an ongoing mental pathology. Therefore, these events are outside the scope of SSI or DIB. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("The medical record supports the conclusion that any depression experienced . . . was situational in nature, related to marital issues . . . ."); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was the result of financial matters). Furthermore, the ALJ referenced her mental status testing completed in August 2014, stating: "she had appropriate attention, logical and organized thought processes, and fair insight" and a provider's short-term psychotherapy led to "remarkable improvement in [Plaintiff's] mental status with must less anxiety and improvement in depressive symptoms" (Tr. 18, 576, 626, 631). *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (holding if a claimant's symptoms are controlled by treatment or medication, the symptoms are not disabling); C.F.R. §§ 404.1529, 416.929.

Third, the record indicates that Plaintiff struggled with substance abuse and failed to accurately report her substance abuse history. Specifically, the Plaintiff has tested positive for marijuana metabolites, even after insisting she had only smoked marijuana once (Tr. 13, 693). On July 7, 2014, Plaintiff asserted she only drinks one alcoholic drink on special occasions (Tr. 572). However, on October 5, 2015, Plaintiff was admitted for treatment after attempting to commit suicide and her toxicology report came back with a Blood Alcohol Content of 0.118 (Tr. 844). This report directly contradicted her previous statements. The ALJ found the use of drugs and alcohol to

9

be "not so persuasive as to cause significant limitations in the claimant's daily routine or cause significant mental or physical functioning" (Tr. 13). However, these contradictions diminish Plaintiff's credibility. *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) (declaring contradictions between a claimant's sworn testimony and what is told to physicians weighs against the claimant's credibility).

Plaintiff's statements further diminish her credibility regarding her subjective symptoms. When Plaintiff spoke with Linda Sue Hammonds, a Psychiatric Mental Health Nurse Practitioner ("PMHNP"), Plaintiff admitted she has "never been honest with [any provider] before [today]" (Tr. 699). "The ALJ may properly discount the claimant's testimony where it is inconsistent with the record." *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012). *See also Fitzsimmons v. Mathews*, 647 F.2d 862, 863–64 (8th Cir.1981) (In assessing a claimant's credibility, an ALJ may properly consider a claimant's lack of sincerity). The Court finds, to the extent Plaintiff argues to the contrary, that the ALJ's determination that Plaintiff was not fully credible is based on substantial evidence and is consistent with the Regulations and case law.

**B. RFC**

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true

extent of the claimant's impairments to determining the kind of work the claimant can still complete despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace . . . ." 245 F.3d at 704 (*quoting Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found, based on physical examinations in the record, that Plaintiff had a normal gait and ambulated without assistance, although she asserted she uses a cane (Tr. 17, 35). However, the ALJ determined "[Plaintiff] did not present with one to the hearing and there is no prescription for [a cane] in the record" (Tr. 17). With this information, the ALJ determined that Plaintiff was subject to light work with restrictions (Tr. 17). The ALJ properly evaluated Plaintiff's credibility and determined that Plaintiff's complaints of disabling pain were not fully credible, for numerous reasons, including that Plaintiff's complaints were not consistent with the medical evidence of record (Tr. 13-21). As required by the Regulations and case law, only after doing so and carefully considering the evidence, did the ALJ formulate Plaintiff's RFC based on all the credible evidence. *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of [claimant's] credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."); *McKinney*, 228 F.3d at 863

11

("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing *Anderson*, 51 F.3d at 779). Notably, the ALJ identified Plaintiff's limitations and then assessed her work related abilities on a function-by-function basis.

As previously addressed, the ALJ found Plaintiff could work only in a limited range of light-exertion jobs that would accommodate significant non-exertional limitations to address both physical and mental limitations (Tr. 15). *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining "light work"). This included limiting Plaintiff to frequent pushing and pulling; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; and no repetitive, forceful gripping or climbing of ladders, ropes, or scaffolds (Tr. 15). The ALJ further restricted Plaintiff to jobs in which she would avoid concentrated exposure to cold temperatures and vibration, and would require no more than simple, repetitive work tasks and instructions at a specific vocational preparation (SVP) 2 level (*Id.*).

The Court finds that the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed the consistency of Plaintiff's subjective complaints and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record and her inconsistent statements. The ALJ additionally properly addressed the extensive medical opinion evidence of record.

As a preliminary matter, to the extent Plaintiff contends that the ALJ's decision is not supported by substantial evidence because it does not completely mirror the opinion of a particular medical source, as discussed above, in formulating a claimant's RFC, the "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). To the extent Plaintiff argues that the ALJ did not cite specific medical opinions to support the RFC

determination and did not provide narrative discussion to support the RFC determination, the text of the ALJ's decision establishes that he did, in fact, consider the medical opinions of record and did provide a narrative of the medical evidence, upon determining Plaintiff's RFC. Only after considering all the evidence of record did the ALJ formulate Plaintiff's RFC based on his determination of the extent of Plaintiff's credible limitations. *See Lauer*, 245 F.3d at 704; *Nevland*, 204 F.3d at 858. This is evident through the ALJ's discussion of credible experts and the ALJ's reasoning regarding the medical experts' opinions (Tr. 18-19).

The ALJ reviewed the opinion of Amber Richardson, Ph.D. ("Dr. Richardson"), a clinical psychologist and consultative examiner (Tr. 19). After conducting a consultative examination on March 27, 2014, Dr. Richardson issued a psychological service confidential psychological report (Tr. 483-86). In her opinion, Dr. Richardson found Plaintiff "impaired in her ability to understand and remember instructions of moderate complexity" and "impaired in her ability [to] sustain concentration and persistence in tasks" (Tr. 485). However, Dr. Richardson found Plaintiff unimpaired in her ability to interact socially (*Id.*). The ALJ afforded Dr. Richardson's opinion "great weight," finding it consistent with the state agency psychological consultants' opinions, addressed in more detail below (Tr. 19). Specifically, the ALJ found Dr. Richardson's opinion regarding Plaintiff's ability to perform simple and repetitive unskilled tasks without the need for social limitations as well as Plaintiff's inability to concentrate sufficiently to complete complex tasks to be supported (*Id.*). As such, the ALJ limited Plaintiff to the ability to concentrate only to perform simpler, repetitive, and unskilled tasks and included the limitation in his RFC determination (Tr. 15, 19).

The ALJ partially relied upon the opinion of Dr. John Jung, M.D. ("Dr. Jung"), a state agency physician (Tr. 19). Dr. Jung reviewed Plaintiff's medical conditions and completed a Medically Determinable Impairments and Severity ("MDI") report (Tr. 107). Dr. Jung found

Plaintiff suffered from carpal tunnel syndrome, fibromyalgia, and affective disorders (*Id.*). Furthermore, Dr. Jung found Plaintiff's ability to maintain concentration, persistence, or pace was moderately affected by her impairments (Tr. 108) and opined that Plaintiff is impaired in her ability to understand and remember instructions of moderate complexity (*Id.*). However, Dr. Jung determined Plaintiff was not disabled (Tr. 115). The ALJ explicitly included Jung's observation of Plaintiff's limitations in his RFC determination (Tr. 20). The ALJ determined that Plaintiff could complete light work with limitations, further stating "[Jung's] opinion appears to appropriately accommodate the claimant's impairments given the longitudinal medical evidence described above" (*Id.*).

The ALJ afforded great weight to state agency specialists' opinions assessing Plaintiff's psychological condition (Tr. 19). The ALJ found the opinions of Dr. James Morgan, Ph.D. ("Dr. Morgan") and Dr. Joan Singer, Ph.D. ("Dr. Singer") credible because their opinions were supported by substantial evidence (*Id.*). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Furthermore, opinions from state agency consultants may be entitled to greater weight than the opinions of treating or examining sources. *See Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (citing SSR 96-6p); *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014). Dr. Singer completed a Disability Determination of Plaintiff on April 7, 2014 (Tr. 57). Dr. Singer opined that Plaintiff has exertional limitations and postural limitations (Tr. 63) as well as manipulative limitations (Tr. 64). However, Dr. Singer found that Plaintiff was not disabled, despite these limitations (Tr. 68).

Dr. Singer performed an evaluation of Plaintiff's RFC to determine if she was disabled (Tr. 95-96). Dr. Singer found that although Plaintiff's memory was subject to limitations, it was not significantly limited (*Id.*). Dr. Singer only found Plaintiff moderately limited in her ability to

14

maintain attention and concentration for extended periods of time as well as moderately limited in her ability to carry out detailed instructions (Tr. 96). Dr. Singer's evaluation contributed to Dr. Jung's determination of not disabled (Tr. 98).

Additionally, the ALJ gave little weight to the Global Assessment of Functioning ("GAF") scores because the GAF scores are from a "period of acute symptom exacerbation" (Tr. 19-20). Although the GAF scale is used to measure a patient's level of psychological, social, and occupational functioning, GAF scores do not provide a reliable longitudinal picture of a claimant's mental functioning for a disability analysis. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Furthermore, Plaintiff's GAF scores did not improve despite medical evidence illustrating the contrary (Tr. 566-585, 613-636). On July 8, 2014, while Plaintiff was admitted to the Phelps County Regional Medical Center, Plaintiff received a GAF score of 30 (Tr. 570). While receiving counseling from Pathway Community Health, Plaintiff's GAF score started at 41, but improved to 43 during her treatment (Tr. 738-814). As previously discussed, the Plaintiff "has not been entirely candid with the providers" (Tr. 18). Accordingly, the ALJ properly afforded Plaintiff's GAF scores little weight. *See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (stating an ALJ may afford greater weight to medical evidence and testimony than to GAF scores).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as the evaluation of Plaintiff's subjective complaints;

15

that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

**C. Vocational Expert Testimony**

Finally, Plaintiff asserts that the hypothetical question to the vocational expert does not capture the concrete consequences of the Plaintiff's condition and therefore, the response of the vocational expert does not represent substantial evidence. Specifically, Plaintiff argues that because the restrictions contained in the RFC are not supported by the evidence of record, the hypothetical question posed is consequently flawed and the vocational expert's response does not represent substantial evidence. However, as previously addressed, the Court finds the ALJ's RFC determination to be consistent with the relevant evidence of record. Accordingly, as the ALJ appropriately included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the Court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit (Tr. 44-48). *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."). Because there were other jobs which Plaintiff could perform, the Court additionally finds that the ALJ's determination that Plaintiff was not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 24th day of September, 2018.

                                                  /s/ Noelle C. Collins
                                                 NOELLE C. COLLINS
                                                 UNITED STATES MAGISTRATE JUDGE